**McELROY et al. v. WILSON et al.**

Court of Appeals of Kentucky.

Feb. 12, 1954.

Dan Jack Combs, Pikeville, for appellants.

J. A. Runyon, Francis M. Burke, Pikeville, for appellees.

CAMMACK, Justice.

This appeal is from a judgment denying the appellants, children of H. T. Williamson by his first marriage, relief in their action to have canceled a deed executed by their father to Keither and Lizzie Wilson in December, 1942. H. T. Williamson died in March, 1943.

After the death of his first wife, Williamson married Mary Dowell, a woman much younger than he, in 1924. In September, 1942, Keither Wilson, a total stranger to H. T. Williamson, went to Williamson's home to talk with him about renting the Turkey Creek farm (the land in controversy). Williamson refused to rent it, but when told that his renter, a long-time friend, was moving he offered to sell the farm for $10,000. There are 70 acres in this farm, 30 acres of low land and 40 acres of high bottom land. The farm is located just across the river, two miles from Williamson, West Virginia. It had six dwelling houses and one dairy barn on it. Some of these houses were in need of repair. Wilson asked for time in which to think over the offer. He returned two weeks later and told Williamson he was ready to buy. A survey was made in accordance

with Williamson's instructions and a deed drawn up by Williamson's attorney and signed on December 17, 1942. In this deed a lien was retained to secure the purchase price. Appellees paid the $10,000 purchase price, but the appellants refused to release the lien.

In the latter part of November, 1942, Williamson had a stroke and was very ill. He died intestate on March 12, 1943, as a result of a second stroke. The appellants filed this action in July, 1952, seeking to cancel the deed upon the grounds of undue influence, mental incapacity and inadequate consideration.

The appellants offered testimony showing that during the last few months of Williamson's life he was mentally incompetent and suffered from high blood pressure, heart failure and urinary obstruction; that Mary, his wife, gave him narcotics and made an abundant supply of whiskey available to him, when for the past 50 years he had abstained from the use of alcohol; and that some of the people who went to see him were refused admission but those who were admitted said he was very quiet and seemed to be abnormal. The appellants' evidence shows that the 70 acre tract of land was much more valuable than the $10,000 paid for it by the appellees.

■ The testimony offered by the appellees is equally as forceful as that offered by the appellants. The appellees proved by Williamson's own lawyer, banker and close friends, who had dealt with him for years, and continued to do so until shortly before he died, that he was mentally competent to pass title to the land in question. There is evidence showing that his bank had asked him to liquidate some of his holdings in order to satisfy his obligations. Dr. Scott stated that he had prescribed some medicine for Williamson, but it had been so long ago that he would have to ask the local drug store what it was. He also said that Williamson was mentally competent prior to his last stroke.

■ Even if it be assumed that Mary, the second wife, exercised undue influence upon Williamson, it was not shown that there was any connection between her and the appellees. Her conduct could not be charged to the appellees, who, apparently, acted in good faith, even though they did obtain a bargain. There is ample evidence to support the finding of the chancellor, and we are not disposed to disturb his ruling.

Judgment affirmed.